UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM PITTMAN,<br><br>Plaintiff,<br><br>v.<br><br>METUCHEN POLICE DEPARTMENT, et al.,<br><br>Defendants. | Civ. No. 2:12-cv-02044 (KM) (MAH)<br><br>MEMORANDUM OPINION |

<u>MCNULTY, District Judge</u>

This matter comes before this Court on the motion of certain Defendants, the Middlesex County Prosecutor's Office ("MCPO"), Middlesex County Prosecutor Bruce J. Kaplan, and Middlesex County Assistant Prosecutor Jason Boudwin (together, the "Prosecutors") (MCPO and the Prosecutors are collectively referred to as the "MCPO Defendants"). They move to dismiss the Complaint of *pro se* plaintiff William Pittman for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). For the reasons set forth below, the MCPO Defendants' motion is granted.

I. **FACTUAL BACKGROUND**

This action stems from the April 7, 2010 arrest of Plaintiff on "peeping tom" charges, and his subsequent prosecution by the MCPO Defendants. At approximately 11:30pm on April 7, 2010, the Metuchen Police received a call

1

from Metuchen resident Eric Goldenberg reporting that a male individual was "walking around his neighbor['] s yard wearing all black clothes." (Compl. ¶ 8.) Mr. Goldenberg stated that he had observed the individual "[w]alking around his neighbor[']s yard for about 10 minutes. (*Id.*) Metuchen Police Department Officer Wayne Karalevich responded to the scene, spoke with Mr. Goldenberg, and asked him to identify the area where he had observed the individual who prompted his call. (*Id.*) Mr. Goldenberg identified the backyard of the residence at 30 McCoy Avenue. Upon entering the yard, Officer Karalevich heard movement which sounded like someone running. (*Id.*) Officer Karalevich started running towards McCoy Avenue, where he encountered a man walking briskly. (*Id.*) Officer Karalevich immediately detained the individual, who was later identified as William Pittman, the plaintiff here. (*Id.*)

The Complaint alleges that Mr. Goldenberg and his girlfriend, Evelyn Magrini, then positively identified Pittman as the person who had been in the yard. (Compl. ¶ 8.) At that point, Pittman was arrested and brought to the police station. (*Id.*) He was charged with violating N.J.S.A. 2C:18-3b(3), Defiant Trespass, and N.J.S.A. 2C:18-c, Peering into windows or other openings of dwelling places.

On April 4, 2012, Pittman filed this action. (Docket Entry No. 1.) At that time, his state criminal charges were still pending. On May 21, 2012, after a jury trial by a jury in Middlesex County Superior Court, Pittman was found guilty on the peering charge. (Plaintiff's Opp. Brief at 5.)

2

In his *pro se* Complaint, Plaintiff appears to allege claims under 42 U.S.C. §§ 1983 and 1988, as well as violations of the Fourth and Fourteenth Amendments to the Constitution of the United States. The Complaint alleges that Assistant Prosecutor Boudwin presented the charges against Plaintiff to the grand jury. (*Id.* at ¶ 3.) The Complaint appears to allege that Sergeant Jim Connolly of the Metuchen Police Department deliberately made false statements to the grand jury in order to "get an indictment by any means necessary" and that all of the MCPO Defendants were complicit in Sergeant Connolly's alleged perjury. (*Id.* at ¶ 33.) The repeated theme of the Complaint is that the MCPO Defendants, in concert with the Metuchen Police Department, acted "with malice" to indict Plaintiff, on charges that were false and lacked probable cause; that this was done with the improper intent to send plaintiff to prison; and that the MCPO Defendants concocted false evidence and false grand jury testimony. As to the MCPO Defendants, the Court interprets this action as one for malicious prosecution.

On July 26, 2012 the MCPO Defendants moved to dismiss the Complaint. (Docket Entry No. 15.) The MCPO Defendants contend that, as arms of the state, they are immune from the instant action by virtue of the Eleventh Amendment. This Court agrees. And those claims that survive are nevertheless defective as a matter of law.

## II.  STANDARD OF REVIEW

Motions to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.,*

67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges are either facial or factual attacks. *See* 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007). The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. Under this standard, a court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

The MCPO Defendants' arguments that they are immune from suit based on the Eleventh Amendment constitute a facial challenge to the jurisdictional basis for the Complaint. Accordingly, the Court must take the allegations of the Complaint as true in considering those arguments. *See Gould Elecs., Inc. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

In addition, and in the alternative, the motions seek dismissal for failure to state a claim. Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump*

*Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

## III. DISCUSSION

### 1. Claims Against The MCPO Defendants In Their Official Capacities: Eleventh Amendment Immunity

The Eleventh Amendment to the Constitution of the United States guarantees the states' immunity from certain claims: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Well settled case law has expanded this so-called "Eleventh Amendment immunity." It is now held to incorporate a more general principle of sovereign immunity that bars citizens from bringing suits for damages against any state in federal court. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *see also Kelley v. Edison Twp.*, No. 03–4817, 2006 WL 1084217, at *6 (D.N.J. Apr. 25, 2006) (citing *Bennett v. City of Atl. City*, 288 F. Supp. 2d 675, 679 (D.N.J. 2003)).

The Eleventh Amendment immunity applies "even though the state is not named a party to the action, as long as the state is the real party in interest." *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999) (quotations and emphasis omitted); *see also Chisolm v. McManimon*, 275 F.3d 315, 322-23 (3d Cir. 2001) ("Eleventh Amendment immunity may be available to a state party-in-interest notwithstanding a claimant's failure to formally name the state as a defendant.") And the state is the real party in interest to a lawsuit if the named

defendant is in fact an "arm of the state." *See Chisolm*, 275 F.3d at 323; *Carter*, 181 F.3d at 347.

In this Circuit, courts examine three factors (the "*Fitchik* factors") when considering whether a named defendant is an "arm of the state": "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." *Chisolm*, 275 F.3d at 323; *see also Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). In this case, those factors establish that the MCPO defendants, acting in their official capacities, are entitled to claim Eleventh Amendment immunity as "arms of the state."

First and most importantly, the payment of any judgment arising out of this suit would come from the state treasury. *See generally Wright v. State*, 788 A.2d 443, 464 (N.J. 2001) ("[T]he State should be obligated to pay the county prosecutors and their subordinates' defense costs and to indemnify them if their alleged misconduct involved the State function of investigation and enforcement of the criminal laws.") (citation omitted).

Second, it is clear that under New Jersey law, the MCPO and its prosecutors act on behalf of the State when they are performing prosecutorial functions. *Id.* at 462 ("when prosecutors perform their law enforcement function, they are discharging a State responsibility that the Legislature has delegated to the prosecutors ... the county prosecutors' law enforcement function is clearly a State function.")

Finally, the MCPO Defendants, when acting in their prosecutorial capacities, are not autonomous entities, as a matter of law. Under New Jersey law, the Attorney General maintains a supervisory role over the MCPO in its execution of law enforcement policy. *See Wright*, 788 A.2d at 462. The Attorney General also is authorized to intervene and take over any investigation or prosecution initiated by county prosecutors. N.J. STAT. ANN. § 52:17–106B.

Applying the *Fitchik* factors to this action, this Court finds that the MCPO Defendants are arms of the state, and thus, that New Jersey is the real party in interest to the litigation. The MCPO Defendants are therefore entitled to Eleventh Amendment immunity against claims asserted against them in their official capacities.

There are three narrow exceptions that limit a state's Eleventh Amendment immunity. None, however, apply to the claims that Plaintiff asserts against the MCPO Defendants here. First, Congress may have the authority to abrogate a state's immunity for rights protected under the Fourteenth Amendment. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Such abrogation must be "an unequivocal expression of congressional intent to overturn the constitutionally guaranteed immunity of the several States." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (internal quotation omitted). Here, the opposite is the case. The Supreme Court has specifically held that Congress has not abrogated immunity for actions brought pursuant to 42 U.S.C. § 1983.

*See Quern v. Jordan*, 440 U.S. 332, 340 (1979) (internal citation omitted). Congress has not abrogated New Jersey's Eleventh Amendment immunity.

A second exception to state sovereign immunity is state consent to suit. *See Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991). A state must, however, clearly and unequivocally declare its intention to submit to federal jurisdiction. *See Florida Prepaid*, 527 U.S. at 675-76 (quoting *Great N. Life Ins., v. Read*, 322 U.S. 47, 54 (1944)). New Jersey has never explicitly consented to a suit like this one.

A third and final exception allows suits against state officials in their official capacities where a plaintiff seeks prospective, injunctive relief for ongoing violations of federal law. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908). This exception is similarly unavailable, as Plaintiff does not seek injunctive relief from the MCPO Defendants, but rather seeks money damages for alleged past wrongs.

In this action, the MCPO Defendants, as arms of the State of New Jersey, enjoy Eleventh Amendment immunity from suit in this Court. No exception that would impair or destroy that immunity is present here. Thus, the claims against the MCPO Defendants in their official capacities must be dismissed.

> 2. Claims Against MCPO Defendants in Their Individual Capacities: Prosecutorial Immunity and Failure to State <u>a Viable Federal § 1983 Claim of Malicious Prosecution</u>

The Complaint fails to specify whether the Prosecutors, Kaplan and Boudwin, are being sued in their individual capacities. The issue is significant because a person, even a state official, sued in his individual capacity is not

9

shielded by the Eleventh Amendment immunity.[1] As the Third Circuit has pointed out, "[i]t is obviously preferable for the plaintiff to be specific in the first instance to avoid any ambiguity." *Melo v. Hafer,* 912 F.2d 628, 636 n.7 (1990), *aff'd,* 502 U.S. 21, 112 S.Ct. 358 (1991). But as Plaintiff is *pro se,* the Court will interpret the Complaint liberally as asserting claims against Kaplan and Boudwin in their individual capacities.

### a. Extrinsic documents

Plaintiff's brief in opposition to the motion to dismiss has exhibits attached. These are documents pertaining to his arrest and subsequent indictment: e.g., a police report dated April 8, 2010, a grand jury transcript dated August 25, 2010, the complaint – warrant, and briefs supporting and opposing Plaintiff's motion to dismiss the state court indictment.

Typically, when a federal court relies on matter outside of the pleadings, it must convert a motion to dismiss into a motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P. In announcing its intention to do so, the

---

[1]
> "[S]ince *Ex parte Young,* 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908)," we said, "it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." [citing *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687 (1974).] While the doctrine of *Ex parte Young* does not apply where a plaintiff seeks damages from the public treasury, damages awards against individual defendants in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." 416 U.S., at 238, 94 S.Ct., at 1687. That is, the Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983. *Ibid.*

*Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358 (1991).

court will then provide all parties with a reasonable opportunity to present all material pertinent to a Rule 56 motion. *See* FED. R. CIV. P. 12(d). That procedure allows every party a fair opportunity to respond to any extrinsic documents that the court considers. *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court may, however, without converting the motion to one for summary judgment, consider documents to which a plaintiff refers in the complaint or upon which its claims are based. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit*, 998 F.2d at 1196. In such a case, a party "obviously is on notice of the contents of the document, and the need for a chance to refute evidence in greatly diminished." *Pension Benefit*, 998 F.2d 1192 at 1196–97. Here, the Complaint refers to the extrinsic documents related to Pittman's arrest and prosecution, and his claim for malicious prosecution is plainly based on those same documents. And of course it is plaintiff, not defendant, who submitted the documents to the court. Therefore, I may and will consider the exhibits included in Pittman's opposition papers without converting the motion to dismiss into a motion for summary judgment. In any event, they are of limited significance, in that they merely confirm what is inferable from the Complaint. Consideration of them does not affect the result.

    b. *Prosecutorial immunity*

Before considering whether Plaintiff has adequately alleged the elements of a malicious prosecution claim, I will address the threshold issue of prosecutorial immunity. In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the

11

Supreme Court held that a prosecutor is absolutely immune from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," *id.* at 430–31, including use of false testimony and suppression of evidence favorable to the defense by a police fingerprint expert and investigating officer. Since *Imbler*, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted). The Court of Appeals for the Third Circuit recently confirmed prosecutorial immunity in § 1983 actions in *LeBlanc v. Stedman*, 483 Fed. App'x 666 (3d Cir. 2012) (non-precedential).

These defendants are absolutely immune from the claims of malicious prosecution alleged in this Complaint. *See Rehberg v. Paulk*, ⸺ U.S. ⸺, ⸺, 132 S.Ct. 1497, 1504, 182 L.Ed.2d 593 (2012); *Imbler*, 424 U.S. at 430–31. The acts alleged, however wrongful, were taken in exercise of these defendants' core functions as prosecutors. That much is obvious from the Complaint. In an excess of caution, I have examined the additional exhibits submitted by Plaintiff, but I find nothing there to alter that conclusion. Because the misconduct alleged in the Complaint against the prosecutors consists of acts taken in their role as advocates for the state, the Section 1983 damages claims against them must be dismissed on grounds of absolute prosecutorial immunity.

### c. *Malicious prosecution: failure to state a § 1983 claim*

In the alternative, even if I had not found these defendants to be immune, I would find that the Complaint fails to state a viable claim of malicious prosecution under 42 U.S.C. § 1983.[2] The elements of the state-law tort of malicious prosecution are incorporated in an analogous federal Section 1983 claim. *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (applying the Restatement (Second) of Torts §§ 659, 660 to determine whether a Section 1983 malicious prosecution claim was deemed to have terminated in favor of the accused); *see also Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (same); *Hilfirty v. Shipman*, 91 F.3d 573 (3d Cir. 1996) (same). Thus, to state a Section 1983 claim for malicious prosecution, a plaintiff must allege the following essential elements: (1) defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) defendant initiated the criminal proceeding without probable cause; (4) defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff suffered deprivation of liberty consistent with a violation of the Fourth Amendment or a violation of another explicit text of the Constitution. *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d. Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

I here focus on the critical second element. The complaint does not allege that the criminal proceeding ended in Pittman's favor. Indeed, it is a matter of

---

[2]   This substantive deficiency would bar relief against the MCPO as well, even if it were not immune under the Eleventh Amendment.

13

public record that it did not; Pittman was convicted by a jury of violating the State "peering" statute.[3]

In addition, and in the alternative, then, the Complaint must be dismissed as against the MCPO Defendants because it fails to state a Section 1983 claim for malicious prosecution.

## IV.   CONCLUSION

For the reasons stated above, the MCPO Defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), is granted on grounds of Eleventh Amendment immunity and prosecutorial immunity. In the alternative, the Complaint is dismissed as against the MCPO Defendants for failure to state a claim for malicious prosecution under 42 U.S.C. § 1983, pursuant to FED. R. CIV. P. 12(b)(6).

Dated: March 14, 2013

_____
KEVIN MCNULTY
United States District Judge

---

[3]   Where a jury has found guilt beyond a reasonable doubt, the other elements may become problematic as well. The existence or not of probable cause and the motives of the police and prosecutors, for example, lose much of their significance.