**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILLIAM PITTMAN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**METUCHEN POLICE DEPARTMENT, et al.,**<br><br>**Defendants.** | Civ. No. 2:12-cv-02044 (KM) (MAH)<br><br>**MEMORANDUM OPINION** |

**MCNULTY**, District Judge

This matter comes before the Court on two motions for summary judgment, pursuant to Fed. R. Civ. P. 56. The first (ECF no. 53) is brought by defendants the Borough of Metuchen, the Metuchen Police Department, Lieut. David Irizarry, Officer Wayne Karalevich, Officer Edward Mosko, Officer Kevin Doherty, Officer Octavio Tapia, and Sgt. James Connolly. The second (ECF no. 54) is brought by defendant Officer Anthony Carro, who joins in the other defendants' motion as well.[1]

Plaintiff William Pittman, *pro se*, brought this civil rights action. Certain of his claims against the town and the police officers arise from his arrest and conviction of "peeping Tom" charges. Others arise from a separate incident in which Pittman was allegedly attacked by defendant Anthony Carro's dog. For the reasons expressed herein, both of the summary judgment motions will be granted.

---

[1] I have previously entered an Order and Opinion dismissing the Complaint as against the Middlesex County Prosecutor's Office, County Prosecutor Bruce J. Kaplan, and Assistant Prosecutor Jason Boudwin on immunity grounds and for failure to state a claim. (ECF nos. 36, 37)

1

## I.     FACTUAL BACKGROUND OF "PEERING" CHARGE

I first discuss the summary judgment motion relating to the April 7, 2010 arrest of Plaintiff on "peering," or "peeping Tom" charges, and his subsequent prosecution.

### A.   Defendants' Statement of Undisputed Facts

I here summarize Defendants' Statement of Undisputed Material Facts (DSUMF, ECF no. 53-3) as it relates to the peering arrest and conviction.

On April 7, 2010, Patrolman Karalevich received a report of someone peering into a window of the house neighboring 27 Sidney Place in Metuchen. When he arrived, a neighbor, Eric Goldenberg, and his girlfriend, Evelyn Magrini, reported that they had seen someone looking through the window of 30 McCoy Avenue. Karalevich detained Mr. Pittman near the house.

Sgt. Connolly arrived and interviewed the witnesses, Goldenberg and Magrini. Both positively identified Pittman as the man they had seen peering into the window. Pittman was arrested and processed. Goldenberg and Magrini gave statements at the station house.

Pittman was charged by complaint with "peering" in violation of N.J. Stat. Ann. § 2C:18-3(c), and defiant trespass in violation of N.J. Stat. Ann. § 2C:18-3(b)(3). [2] Hon. Gary Price, J.M.C., approved the placement of the peering charge

---

[2]

    b. Defiant trespasser. A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

        (1) Actual communication to the actor; or
        (2) Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or
        (3) Fencing or other enclosure manifestly designed to exclude intruders.

    c. Peering into windows or other openings of dwelling places. A person commits a crime of the fourth degree if, knowing that he is not licensed or privileged to do so, he peers into a window or other opening of a dwelling or other structure adapted for overnight accommodation for the purpose of invading the privacy of another person and under circumstances in which a reasonable person in the dwelling or other structure would not expect to be observed.

on a warrant complaint (no. 1210-W-2010-42), based on prior convictions. Bail was set at $50,000, and a psychological evaluation was ordered.

A Middlesex County Grand Jury heard testimony by Sgt. Connolly and Patricia LaGay, who lived at 30 Sidney Place. It found probable cause and indicted Pittman for the peering charges. On May 21, 2012, after a jury trial in Middlesex County Superior Court, Pittman was found guilty of the peering charge, a fourth degree offense.

On August 31, 2012, the Hon. Joseph Paone, J.S.C., sentenced Pittman to 18 months' incarceration. Mr. Pittman has a record of 26 arrests, some 21 of them resulting in convictions.

See DSUMF ¶¶ 1–32, 61–63, & Exs. A–N.

### B. Plaintiff's Statement of Undisputed Facts

For simplicity, I will here reproduce in its entirety Plaintiff Pittman's statement of undisputed material facts as it relates to the April 7, 2010 arrest of Plaintiff on "peering," or "peeping Tom" charges, and his subsequent prosecution. ("PSUMF", ECF no. 76 at 12)

1. In the Complaint , Plaintiff states facts of violations of the rights afforded by The by United States Constitution pursuant to 42 U.S.C. § 1983 against the Metuchen Defendant's . The factual basis of Plaintiff's Complaint are arrest on April 7, 2010 and An incident which involves Officer Carro on October 20, 2010 (See Document Number 1).

2. On April 7, 2010 at 11:50 p.m. dispatcher Chrissy received a call from a Eric Goldenberg of the residence of 27 Sidney Place stating that a male was walking around His neighbor's yard he was asked to give a description in which he stated that the person Was 6, feet tall wearing all black, when, when asked again to give a better description He could not, the area that he saw the male walking around was directly in front of His back porch which is 24 McCoy Avenue, {See Exhibit A which is the 911 call) {See Exhibit B a copy of the two

---

N.J. Stat. Ann. § 2C:18-3.

(2) page Investigation Report dated April 8, 2010 prepared By Patrolman Karalevich.)

3. Officer Karalevich responded and parked his vehicle on the corner of Sidney Place And Amboy Avenue and walked north on Sidney Place (See Exhibit B.)

4. As Officer Karalevich approached the front yard of 27 Sidney Place, Mr. Goldenberg Advised Officer Karalevich that he and his girlfriend Evelyn Magrini, saw an individual Looking through the rear windows of 30 McCoy Avenue (See Exhibit A.)2. References to the documents submitted as part of the certification of Plaintiff William Pittman in support of Plaintiff's Motion for Summary Judgment, will be hereinafter Be referred as Exhibit followed by the corresponding letter.

5. After proceeding up the driveway, Officer Karalivich shined his flashlight into the Rear yard of 30 McCoy Avenue and heard movements as if someone running towards Avenue (See Exhibit B.)

6. Officer Karalevich proceeded through the back yards towards the front yard and Intercepted Plaintiff walking briskly down MCoy Avenue, and stated what are you doing Walking around in yards Plaintiff denied walking around in any yard, Plaintiff was asked name And frisked (See Exhibit C. which is MVR of car 44 Officer Mosko.)

7. At this point Officer Mosko was driving down McCoy Avenue on the opposite side And stopped Officer Karalevich demanded that Plaintiff put his hands on the hood of the Car, Officer Karalevich performed a pat down of Plaintiff for weapons, which resulted In negative results. (See Exhibit c.)

8. Officer Karalevich would go back the way he came from which was 24 McCoy Avenue In which he would speak to the witnesses Mr. Goldenberg and Ms.Magrini, (See Exhibit ' which Is a picture of 24 McCoy Avenue which is directly in front of the rear porch of 27 Sidney Place

9. Sergeant Connolly would respond to the scene, and speak to Plaintiff and state weren't You arrested before for this Plaintiff stated that he was walking down the street, and was Stopped, Officer Doherty would arrive and

assist Officer Mosko, while Sergeant Connolly Would go and speak to witnesses in which he would he would state we just subdued a guy Coming out of the yard (See Exhibit D. which is MVR from patrol car 50 Sergeant Connolly. )

Sergeant Connolly would ask the witnesses if they would be able to l.D. the person that They saw in which they stated yes, he would activate his mobile camera in car 50, during The transport , Mr. Goldenberg mentioned that the suspect had on all black but had something Silver on the side of his shirt, Plaintiff was standing with officers uncuffed , and light was Shined on him Mr.Goldenberg and Ms. Magrini positively Identified the person they saw , looking In the windows of 30 McCoy Avenue , the show up was recorded from the mobile unit of car 50 and placed into evidence , a DVD statement was taken and placed into evidence , also a Signed statement was taken (See Exhibit F. Sergeant Connolly's report 2pgs)

(See Exhibit G. recorded statement of Eric Golden Berg, Ms. Magrini ) also Plaintiff Was placed under arrest after the identification by the witnesses .

(See Exhibit H statement of certainty by Eric Goldenberg taken by Sergeant Connolly 1 pg.) (See Exhibit I statement of certainty by Evelyn Magrini taken by Sergeant Connolly 1 pg.) Once at headquarters Plaintiff was processed and charged with 2C:18-3c peering and 2C-18-3(b) defiant trespassing Judge Price was contacted , and bail was set at $ 50.000 And no contact with the victim and witnesses , and psychological evaluation be done Plaintiff was transported to the Middlesex County Adult Corrections Center (See Exhibit J. Complaint.) (See Exhibit K. Summons)

On April 8, Sergeant Kilker would go to 30 McCoy Avenue and inspect the area and there was Nothing of evidential value he took pictures of Plaintiff's vehicle 8 photographs depicting the Location on Hanson Avenue a 1994 Nissan Sentra N.J. registration YLX SOL (See Exhibit L 1 pg)

10.( See Exhibit G Recorded statement of Eric Goldenberg, Evelyn Magrini on 4/8/2010)

11. (See Exhibit H. Statement of certainty signed by Eric Goldenberg on 4/8/2010)

12.( See Exhibit I Statement of certainty signed by Evelyn Magrini )

13. ( See Exhibit J is complaint No. 1210-W-2010 42 signed by Officer Karalevich, 2C:18-3C Peering)

14. (See Exhibit K Summons signed by Officer Karalevich 1210-S-2010 43 Defiant Trespass)

15. (See Exhibit L Pictures taken by Sergeant Kilker of 30 McCoy Avenue , also of Plaintiff's Car on 4/9/2010) .

16. The charges that Plaintiff was charged with resulted in an indictment by the Middlesex County grand jury on August 25,2010 the witnesses to testify were Sergeant Connolly, and Patricia Legay the victim and resident of 30 McCoy Avenue Metuchen, New Jersey, (See Exhibit M.)

17. Plaintiff was Indicted on for peering into victims windows in violation of N.J.S.A. 2C:18-3(c) The disorderly persons offense was not presented N.J.S.A, 2C:18-3(b) (3) (See Exhibit N )

18. Plaintiff would stand trial on the N.J.S.A.2C:18-(c) the peering the trial was conducted by The Honorable Joseph Paone, J.S.C. from May 14-21, Plaintiff was convicted , the Defiant Trespass was dismissed (See Exhibit O Judgment of Conviction, and Order Of Commitment .

19. Risk Assessment (Preliminary Results) interview with psychologist : Dennis H.Sandrock, PhD On April 12, 2010, at the Middlesex adult Correction Center, (See Exhibit P Results)

20. Photos of the area rear yard of 27 Sidney Place Metuchen , also photos of 24 McCoy Avenue which is the rear , yard also theont , also the front of 27 Sydney Place, the rear Yard of 30 McCoy Avenue also the front (See Exhibit Q Plaintiff will mark residence)

21. On August 21, 2012 Plaintiff would file factual description to the court in which the Court would return stating that the enclosures are discovery , and should be filed on CM/ECF Plaintiff would forward all documents and letter to Mr. William T.Connell Esq., Mr. Michael J. Stone Esq., Karol Corbin Walker Esq., Gregory S.Thomas Esq. (See Document 29 ) .

22 . ( New Jersey Criminal History Detailed Record ordered by Assistant Prosecutor Carlos Jimenez requested April 28,2010 Pgs 1-6, also Certified Disposition of Summons case# 921409, Warrant# W 739597, Violation 2C: 14-3b Not Guilty Disposition Date May 19, 1993 See Exhibit R.

23.Plaintiff after being sentenced by Honorable Judge Paone would fill out forms for Appeal After not hearing about Appeal Plaintiff would contact Public Defenders Office Appellate Section In Newark, NJ and a certification was forwarded to Plaintiff in which was filled out and Forwarded signed October 19,2013 on October 30,2013 a Notice Of Appeal was forwarded To the Clerk of the Superior court in Trenton as well as the Office of the Attorney General Middlesex County Criminal Case Management, Middlesex County Prosecutor Office, Hon. Joseph Paone, J.S.C. (See Exhibit S.)

## II. ANALYSIS OF CLAIMS RELATING TO "PEERING" CHARGE

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt

as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

Although it is not always supported by evidence or affidavits, I have taken the plaintiff's statement of material facts at face value and interpreted it in light of statements in his briefs. I have examined the record, including the exhibits, in order to identify any genuine, material issue of fact, but I find that plaintiff's claims must be denied as a matter of law.

### A. *Heck v. Humphrey*

Mr. Pittman's claims cannot be maintained because they attack the basis of his state "peering" conviction, which has not been overturned or vacated. Under the doctrine of *Heck v. Humphrey*, 512 U.S. 477, S. Ct. (1994), these claims are barred, and summary judgment must be granted to the defendants.

On April 7, 2010, Mr. Pittman was arrested by the Metuchen police. He was charged by complaint with "peering" (a "peeping Tom" charge) in violation of N.J. Stat. Ann. § 2C:18-3(c), and defiant trespass in violation of N.J. Stat.

Ann. § 2C:18-3(b)(3). A Middlesex county Grand Jury found probable cause and indicted him for the peering charge.[3] After a jury trial in Middlesex County Superior Court, Pittman was found guilty of the peering charge, a fourth degree offense. On August 31, 2012, the Hon. Joseph Paone, J.S.C., sentenced him to 18 months' incarceration. These are facts of public record, not meaningfully in dispute, established by properly sponsored exhibits. (*See* MSUMF ¶¶ 1–32, 61–63, & Exs. A–N.)

Under the *Heck* doctrine, no civil claim that attacks the basis of a criminal conviction can be brought unless and until the conviction itself is successfully attacked. A convicted defendant cannot, for example, sue the government witnesses on the theory that they lied, or sue the police for seizing the evidence on which the conviction was based. Thus *Heck* has often been applied to cut off claims of persons who seek, in effect, to relitigate the merits of currently valid convictions via a civil suit challenging the legality of, *e.g.*, a search. *See, e.g., Crawford v. Frimel*, 337 F. App'x 211, 213 (3d Cir. 2009) (per curiam) (applying *Heck* bar to Fourth Amendment claim as success would imply the invalidity of his conviction); *Hinton v. White*, No. 10-3902, 2012 WL 6089476, at *3 (D.N.J. Dec. 6, 2012) (applying *Heck* bar to illegal search and seizure claim that would call into question state criminal conviction) (citations omitted).[4] Likewise, plaintiff's claim that the "show-up" identification was constitutionally deficient (which is not adequately explained in any event)

---

[3] The fate of the trespassing charge is somewhat unclear. Only the peering charge was pursued before the grand jury, and the eventual judgment of conviction notes that the trespassing charge is no longer in the case. *See* DSUMF Ex. N at 12; Ex. L. (Defendants' papers inadvertently sometimes state it the other way around.) It might be inferred that the trespassing charge was dropped in favor of the indictable peering offense. Pittman at times complains that the yard was not fenced, but offers no evidence cognizable on summary judgment. One photo seems to suggest there was a fence on the side facing the driveway and street, but this is far from clear. *See* PSUMF Ex. E.

[4] A dismissal under *Heck* alone will ordinarily be without prejudice to reassertion in the event the criminal conviction is vacated. *See Brown v. City of Phila.*, 339 F. App'x 143, 145-46 (3d Cir. 2009) (per curiam) (citing *Fottler v. United States*, 73 F.3d 1064, 1065-66 (10th Cir. 1996)).

might properly have been the subject of a suppression motion, but is not the basis for a post-conviction lawsuit.

Claims of false arrest and malicious prosecution are likewise barred. Both require that probable cause be lacking, see infra. But the officers arrested Pittman based on the same eyewitness accounts that later furnished the basis for the grand jury's finding of probable cause and the petit jury's conviction of him on a reasonable doubt standard, which far exceeds that of probable cause.

A false arrest claim is therefore barred by Heck. See Carter v. Warraich, No. 08-1835, 2009 WL 871947, at *2 (D.N.J. Mar. 30, 2009) (collecting cases dismissing false arrest claims as barred by Heck); see also Wallace v. Kato, 549 U.S. 384, 393-94 (2007) (assuming for statute of limitations purposes that, under Heck, false arrest claim that impugns conviction is barred). A fortiori, any claim of malicious prosecution is barred by Heck, which was itself a malicious prosecution case. Here, the prosecution was supported by an indictment, obtained on a showing of probable cause, and it resulted in a conviction by proof beyond a reasonable doubt.

There is no meaningful distinction between the evidence underlying the original arrest, the indictment, and the conviction itself. To say, as Pittman does, that there was no probable cause to arrest or prosecute him directly impugns the conviction. Any such claim is barred by Heck.

### B. Probable Cause

Assuming that these claims could past the bar of Heck, they would nevertheless fail because Pittman has failed to raise a triable issue of fact as to the existence of probable cause.

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995); Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988)). "Probable cause to arrest exists when the facts and the circumstances within the

arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)); *see also Minatee v. Phila. Police Dep't*, 502 F. App'x 225, 228 (3d Cir. 2012) (citation omitted). The arresting officer must only reasonably believe at the time of the arrest that an offense is being committed, a significantly lower burden than proving guilt at trial. *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005); *see also Minatee*, 502 F. App'x at 228 (citation omitted). When a plaintiff is arrested for multiple charges, the establishment of probable cause as to one charge is sufficient to defeat a Fourth Amendment claim of arrest without probable cause. *See Startzell v. City of Phila., Pa.*, 533 F.3d 183, 204 n.14 (3d Cir. 2008) (citation omitted).

In order to prevail on a Constitutional claim of malicious prosecution, a plaintiff must demonstrate that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Bingnear*, 441 F. App'x 848, 851 (3d Cir. 2011) (quoting *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009)). *See also Lind v. Schmid*, 67 N.J. 255, 262, 337 A.2d 365, 368 (1975) (similar elements for state law tort claim).

Mr. Pittman has failed to raise a factual issue as to either.

All of the relevant evidence establishes that the police had in their hands an adequate probable cause basis for the arrest and the initial charge. Most pertinently, two eyewitnesses, Goldenberg and Magrini, identified Pittman as the person who had been on the property of 30 McCoy Avenue and peered in the window.

Pittman, in his statement of facts, actually corroborates that this eyewitness identification occurred. He denies that he committed the offense, but that is not the issue. The issue is whether the facts the officers had would justify a reasonable person in believing that an offense had been committed, and that Pittman was the person who committed it. *See generally Brinegar v. United States,* 338 U.S. 160, 175–76 (1949) ("Probable cause exists where 'the facts and circumstances within ... [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.") Clearly the officers possessed sufficient information.

The grand jury indictment on the peering charge is itself *prima facie* evidence of probable cause. *See Rose v. Bartle,* 871 F.2d 331, 353 (3d Cir. 1989). And it was supported by sufficient evidence. The officer related the eyewitness identifications to the jury, and Ms. LaGay, the resident of the house, testified that she did not know Pittman and never invited him to her home. (MSUMF Ex. N) This, too, was clearly a sufficient showing of probable cause. Pittman disputes the *truth* of this testimony, but he cannot and does not dispute that this *was* the testimony the grand jury heard (and believed).

Pittman's papers do not advert to any evidence in support of his generalized accusations of falsehood. The complaint's conspiratorial allegations never were backed up by affidavits, testimony, or documentary evidence. For example, he claims in his brief that Connolly must have prompted the witnesses, but offers no evidence of that. The statements of the witnesses, attached to his papers, provide no support for his claims of perjury or falsehood.

As to malicious prosecution, there is also a requirement that the criminal proceedings have concluded in the plaintiff's favor. *See supra.* As to the peering charge, they did not. Mr. Pittman was convicted of the peering charge beyond a reasonable doubt.

For these reasons, too, then, summary judgment must be awarded to defendants.[5]

## III. FACTS RELATING TO CARRO INCIDENT

### A. Carro's Statement of Undisputed Facts

Officer Anthony Carro, while he submits his own papers, also adopts by reference those filed on behalf of the other defendants. I summarize here the relevant statements in the DSUMF, ECF no. 53-3. The following facts are taken from DSUMF ¶¶ 33–61 and Exhibits O–W.

On October 20, 2010, Officer Anthony Carro, who was off duty, was walking his dog on Hollywood Avenue. A person approached him. Carro recognized the person as Mr. Pittman, whom Carro had previously arrested.

Carro's dog barked and growled as Pittman approached. The dog was wearing a muzzle. Pittman followed Carro, but then withdrew.

Concerned that Pittman might be following him, Carro called upon Officer Tapia. He checked the area, but did not see Pittman. Carro and Tapia both saw Pittman in his car. As Tapia approached, Pittman swerved, almost striking a parked car. Tapia approached the car, asked to see Pittman's license, and issued a warning, but not a summons.

Pittman later came to the police station to report the dog incident, claiming that the dog had attacked him and ripped his jacket. Tapia explained that the rip was inconsistent with damage from an animal, and also stated that the dog had been muzzled.

Pittman sent a letter to the Metuchen Municipal Court demanding that evidence of the encounter be preserved. He sent another letter requesting that a complaint be filed and also requesting a change of venue. He sent a letter to Hon. Travis Francis, J.S.C., of the Middlesex County Superior Court, requesting assistance in filing a complaint against Officer Carro. Judge Francis

---

[5] In his brief, Pittman states that he has been the victim of the defendants' intentional infliction of emotional distress, a state law tort. (ECF no. 76 at 39–40) No such cause of action is pled in the complaint; it cannot be added by way of a brief point in response to a summary judgment motion.

replied in writing recommending that he obtain counsel and file a complaint with the municipality. Judge Francis referred Pittman's claim that the Municipal Court was "hindering" him to the Presiding Municipal Judge and the County Prosecutor.

Pittman again wrote to the Metuchen Municipal Court, not filing a complaint, but stating that he wanted to file a complaint. Judge Price of the Municipal Court responded in writing that Pittman would need to file a formal complaint if he wanted the Court to take any action. Instead, Pittman sent a Notice of Tort Claim to the Municipal Court.

### B. Pittman's Statement of Undisputed Facts

The following facts are taken from PSMUF ¶¶ 25–33 (ECF no. 76 at 16–18). I reproduce them in full:

25. On October 20, 2010 while walking in the Borough of Metuchen on Hollywood Avenue South Bound while an individual now known as Anthony Carro was walking his dog a Doberman Pincher, with no muzzle while coming within five feet plaintiff was viciously attacked pulling And ripping plaintiff jacket a navy blue jacket, the owner Mr. Carro, walked away plaintiff Although he never said anything plaintiff recognized defendant as Metuchen Police Officer Carro. Plaintiff would walk to his vehicle and drive away , while plaintiff was driving Officer Octavia would stop plaintiff, s/b on Spear Street and Woodbridge Avenue , I asked This Officer while I was being stopped I was asked where I was coming from I explained To him that I was walking down Hazelwood and was attacked by Officer Carro dog , I tried To show him my jacket I was told to stay in the car, after giving this Officer my credentials I was told to leave . I would go to the Metuchen Police Department, and request to speak To a supervisor, in which Officer Tapia, would again explain to him what happened he would Take my complaint and state that someone would contact me (See Exhibit T. Operations Report Case No.10-10111 Civil Matter Taken by Officer Tapia, on October 20, 2010. 2 pgs.)

26. Letter Plaintiff would forward to the in house Prosecutor stating what had transpired On October 20, 2010 also asking that evidence be preserved ( See Exhibit U letter dated October, 23, 2010)

27. Letter to in house Prosecutor asking to file complaint and a change of venue due to Conflict of interest C.C. forwarded to Sandra Henn, as well as to Honorable Judge Price Sandra Henn is the Court Administrator, (See Exhibit V letter dated November 15, 2010,)

28. Letter forwarded to Honorable Judge Francis A.J.S.C. with attachments asking for help Letter dated November 23, 2010. (See Exhibit W letter dated November 23, 20110)

29. Letter received from Honorable Judge Francis, dated December 1, 2010 (See Exhibit X Letter from Hon. Judge Francis dated December 1, 2010)

30. Letter dated December 13, 2010 to in house Prosecutor as well as copies to Hon. Judge Price, Court Administrator , Hon. Judge Francis, Prosecutor Bruce Kaplan, (See Exhibit Y Letter that was forwarded December 13, 2010.)

30. Letter dated December 13, 2010 to in house Prosecutor as well as copies to Hon. Judge Price, Court Administrator , Hon. Judge Francis, Prosecutor Bruce Kaplan, (See Exhibit Y Letter that was forwarded December 13, 2010.)

31. letter that was forwarded to plaintiff on December 15, 2010 from the Hon. Judge Price stating what procedures are to be taken to pursue the matter , plaintiff would Come to police station and would not be assisted stated by the court administrator that The matter was being investigated . (See letter that was forwarded by Hon. Judge Price Dated, December 15, 2010)

32. Plaintiff would forward a Notice of Tort Claim was filed in reference to arrest of April 7, 2010 a Notice of Tort Claim was filed against Defendants Metuchen Police Department, Borough Of Metuchen, Lieutenant David Irizarry, Officer Edward Mosko, Sergeant Jim Connolly, Officer Wayne Karalevich, Officer Anthony Carro, (See Exhibit ZZ)

33. Plaintiff would file Notice of Tort Claim against Defendants, Officer Tapia, Officer Carro, And the Borough Metuchen Police Department (See Exhibit ZZZ)

## IV. ANALYSIS OF CARRO INCIDENT

The claim here, although it involves many facts, clearly focuses on the alleged attack on Mr. Pittman by Carro's dog and the failure of the police or the Municipal Court to do anything about it. (*See* ECF no. 76 at 41–45) This, says Pittman, was a deprivation of his Constitutional rights under color of law. Giving the benefit of the doubt to a *pro se* plaintiff, I find a clash of proofs as to whether the dog attacked Pittman and ripped his jacket, or only growled.

Carro first urges that there can be no claim against him pursuant to 42 U.S.C. § 1983 because he did not act under color of state law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *W. v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941)). Acts of a person who happens to be a state employee, but is off-duty, are not actions "under color of law" unless some authority is exercised. See *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23–24 (3d Cir. 1997) (flashing a badge might bring off-duty actions under color of state law).

No such proof is offered here; for all that appears in either side's papers, Carro was walking his dog, and the dog reacted to Pittman's approach. No authority was exercised or apparent during this off-duty encounter with Carro's dog. As to this encounter, no issue of fact is raised as to action under color of state law.

The police and the courts, who allegedly should have done something about Carro's complaints, are state actors. Against them, perhaps a due process claim is intended. But no such claim is established by the evidence

offered by either party, as to which there seems to be little factual disagreement.

Pittman dealt with the authorities over the dog incident. All that occurred, however, is that he wrote letters complaining of the incident and requiring action. The authorities—the courts in particular—answered his letters explaining that if he wished to sue, he would have to file a complaint. He never did so. I see no basis for a due process claim.

The remaining grounds raised by the parties (immunity, municipal liability, punitive damages, and so on) I need not reach.

## CONCLUSION

For the reasons stated above, the defendants' motions for summary judgment will be granted.

Dated: March 22, 2016

_____
KEVIN MCNULTY
United States District Judge